UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Erana Kucera

v.

Civil No. 25-cv-325-SE-TSM
Opinion No. 2026 DNH 126

Commissioner of the Social Security Administration

O R D E R

Erana Kucera challenges the denial of her application for widow's survivor benefits under 42 U.S.C. § 405(g). An administrative law judge (ALJ) found that that Kucera and the decedent wage-earner were not married for nine months preceding his death, see 42 U.S.C. § 402(e); 20 C.F.R. § 404.335, and the Commissioner therefore denied her application for benefits.

Kucera moves to reverse the Commissioner's decision. Doc. no. 7. She argues that she and the decedent were married at common law for more than nine months before his death, which entitles her to survivor benefits.[1] The Commissioner moves to affirm, arguing that the ALJ's decision was supported by substantial evidence. Doc. no. 9. For the reasons discussed below, the court grants Kucera's motion to reverse, denies the Commissioner's motion to affirm, and remands the case to ensure that substantial evidence supports the ALJ's decision.

Standard of Review

For the purpose of review under 42 U.S.C. § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of

---

[1] As discussed further below, Kucera and the decedent were officially married about three months before the decedent passed away. Kucera argues that she and the decedent had a common-law marriage prior to their ceremonial marriage.

evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 587 U.S. 97, 102 (2019). Substantial evidence is "more than a mere scintilla," id. at 103, and exists, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). An ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.[2]

## Background

A detailed factual background can be found in Kucera's statement of facts (doc. no. 7-1), the Commissioner's statement of facts (doc. no. 10), and in the administrative record (doc. no. 6). The court provides a brief summary of the relevant facts here.

In February 2017, Kucera applied for widow's survivor benefits based on her marriage to Wayne John Kelloway. Kucera stated in her application for benefits that the couple had been married from 2004 to February 12, 2017, when Kelloway passed away. At the initial level and again after a request for reconsideration, the Social Security Administration denied her application on the ground that she had not been married for the minimum nine months required to qualify for such benefits. See 42 U.S.C. § 416(c)(1)(E); § 404.335(a)(1). Kucera then

[2] Kucera submitted additional evidence to the Appeals Council on appeal. Although the Appeals Council received and considered the evidence, it did not mention the evidence in its denial of Kucera's request for review. Admin. Rec. at 7-11. Kucera's filings challenge the ALJ's decision, rather than the Appeals Council's review following her offer of new evidence. Therefore, the court employs the familiar substantial-evidence standard and confines its analysis to the ALJ's decision and his consideration of the record that existed at that time.

requested a hearing in front of an ALJ. On June 7, 2023, the ALJ held a hearing using Microsoft Teams. Kucera, who waived her right to be represented by an attorney or another qualified individual at the hearing, appeared and testified.

Kucera presented evidence that she and Kelloway were officially married in a ceremony on November 24, 2016. Although her ceremonial marriage took place less than three months before Kelloway's death, Kucera claimed that her relationship with Kelloway qualified as a common-law marriage under New Hampshire law for many years prior to their ceremonial marriage.

To support her contention, Kucera presented evidence that she and Kelloway lived together since 2004. They were engaged in 2005, though she testified that they saw no reason to have a ceremonial marriage until 2016, when the couple wanted to ensure that medical professionals would allow Kucera to assist with decision-making regarding Kelloway's medical treatment for cancer.

Throughout their relationship, Kucera and Kelloway held joint bank accounts, investment accounts, and credit cards, and they shared living expenses. Kucera testified that she and Kelloway referred to each other as husband and wife following their engagement and evidence supports Kucera's testimony. For example, Kelloway referred to Kucera as his wife in a December 2010 email. Admin. Rec. at 48. Friends and family members submitted written statements confirming that Kelloway referred to Kucera as his wife. Id. at 51, 62. Kelloway's brother and sister-in-law also offered a written statement indicating that they considered the couple to be married prior to their ceremonial marriage, id. at 58, and Kelloway's cousin, Donald, submitted a statement indicating both that Kucera and Kelloway were generally known as married and that he considered them as such, id. at 60.

After considering the evidence, the ALJ denied Kucera's application for benefits. He noted that under social security regulations, the question was whether Kucera and Kelloway had a common-law marriage under New Hampshire law. He cited N.H. Rev. Stat. Ann. § 457:39, which provides: "Persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such, for the period of 3 years, and until the decease of one of them, shall thereafter be deemed to have been legally married." The ALJ found that Kucera and Kelloway did not acknowledge each other as husband and wife and were not generally reputed to be as such. He noted that although there was evidence that Kelloway referred to Kucera as his wife, there was a lack of evidence that Kucera referred to Kelloway as her husband. He further concluded that statements from friends and family did not support a finding that the couple held themselves out as husband and wife.

In addition, the ALJ determined that "the couple's own action of getting married on November 24, 2016, negates [Kucera's] assertion that they were already married." Admin. Rec. at 27. Thus, he concluded that "the evidence now of record does not clearly establish the requirements of common-law marriage under the laws of the State of New Hampshire where the wage-earner resided at his death and the couple's actions of becoming officially married on November 24, 2016, negates the presence of a marriage at common law." Id.

The Appeals Council denied Kucera's request for review of the ALJ's decision, making it the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 422.210(a); see Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

## Discussion

Kucera's motion to reverse argues that the ALJ's decision was not supported by substantial evidence. She contends that the ALJ ignored evidence and erroneously concluded that

the couple's ceremonial marriage negated the existence of their common-law marriage. The court agrees with Kucera and remands the case for further proceedings.

Under 42 U.S.C. § 402(e)(1), the widow of "an individual who died a fully insured individual" is entitled to widow's insurance benefits, so long as certain requirements are met. "As is relevant here, a claimant is deemed to be the widow of an insured individual if her marriage to the insured lasted for at least nine months immediately before the insured died." Branch v. Acting Comm'r of US Soc. Sec. Admin., No. 17-CV-098-LM, 2018 WL 1532613, at *2 (D.N.H. Mar. 29, 2018) (citing § 404.335(a)(1) and 42 U.S.C. § 416(c)(1)(E)).

"To determine the validity and length of a marriage, the court looks to the law of the state in which the insured individual was domiciled at the time of death." Id. at *3 (citing 42 U.S.C. § 416(h)(1)(A)(i) and 20 C.F.R. §§ 404.344, 404.345). "An applicant's common-law marriage to an insured individual, if recognized in the domicile state, can operate as a valid marriage for purposes of obtaining widow's insurance benefits." Id. (citing 20 C.F.R. § 404.726).

The parties agree that Kelloway was domiciled in New Hampshire when he died and, as such, New Hampshire law applies. "'New Hampshire is a jurisdiction which does not recognize the validity of common-law marriages except to the limited extent provided by RSA 457:39.'" Id. (quoting In re Est. of Bourassa, 157 N.H. 356, 357 (2008)). "As noted above, a person seeking to invoke this provision must establish that, for the three years preceding the significant other's death, she and her significant other '(1) cohabited; (2) acknowledged each other as husband and wife; and (3) were generally reputed to be husband and wife in their community.'" Id. (quoting Bourassa, 157 N.H. at 357).

The ALJ found that Kucera failed to meet the second and third element. As mentioned, he acknowledged that multiple witnesses provided statements indicating that Kelloway referred

to Kucera as his wife prior to their official marriage.[3] Nevertheless, he noted that none of these witnesses stated that Kucera referred to Kelloway as her husband. However, the ALJ ignored evidence showing that Kucera did refer to Kelloway as her husband. Kucera testified at the hearing that she and Kelloway referred to each other as one another's spouse. Admin. Rec. at 39. Kucera's best friend, Stephanie Lane, answered "yes" to the question of whether she heard the couple "refer to each other as husband and wife" generally. Id. at 51. Lane also stated that Kucera and Kelloway did so at holidays, dinners, and social affairs. Id.

In addition, the ALJ found that Kucera and Kelloway were not generally reputed to be husband and wife in their community. To support that finding, the ALJ relied on statements by two of Kucera's friends who noted that the couple was engaged but did not say that they were married. Id. at 27. One of those statements was Lane's, who mentioned Kucera's excitement at being engaged but said the engagement supports her belief that the couple were husband and wife throughout their relationship. Id. at 51.

The ALJ also cited Kelloway's brother and sister-in-law's statement, which "did not indicate that the couple held themselves out has [*sic*] husband and wife, only that [they] considered them to be so." Id. at 27. "Reputed" is defined as "being such according to reputation or general belief." Reputed, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reputed (last visited September 8, 2026). Thus, Kelloway's brother and sister-in-law's statement that they considered the couple to be married only supports Kucera's contention that she and Kelloway were generally reputed to be husband and wife in their community. See In re Est. of Buttrick, 134 N.H. 675, 676-79 (1991) (upholding finding of common-law marriage where evidence showed that the claimant's and decedent's family and

[3] The ALJ did not mention Kelloway's 2010 email in which he referred to Kucera as his wife.

friends believed that they were a married couple). Moreover, the ALJ did not explain why he failed to credit other statements, such as the one from Kelloway's cousin, Donald, indicating both that Kucera and Kelloway were generally known as married and that he considered them as such. Admin. Rec. at 60.

The ALJ erred by failing to consider the record evidence contradicting his findings that Kucera did not hold herself out as Kelloway's wife and that the two were not reputed to be husband and wife and by failing to state his reason for not accepting it. See Dube v. Astrue, 781 F. Supp. 2d 27, 36 (D.N.H. 2011). It may be that the ALJ had a reason to credit some evidence over other evidence, but his decision does not demonstrate that he considered the contradictory evidence in a manner consistent with the applicable legal standards. Id. at n.15.

Finally, the ALJ misapplied the law when he stated that Kucera and Kelloway's "actions of becoming officially married on November 24, 2016, negates the presence of a marriage at common law." Admin. Rec. at 27. He noted the Social Security Administration's Program Operations Manual System (POMS) "Section GN 00305.060, supports this finding by establishing that a common-law marriage is one that is not solemnized by a marriage ceremony." Id. However, that section of POMS does not support the ALJ's conclusion. Section 00305.060, which discusses the general requirements for a common-law marriage while acknowledging that those requirements differ by state, provides in relevant part: "the marriage is entered into by mutual consent of the parties to become a married couple from that time on and is not solemnized by a ceremony." That language merely crystallizes the basic principle of a common-law marriage; that it is separate and distinct from a ceremonial marriage. It does not, as the ALJ stated, support the determination that Kucera and Kelloway's ceremonial marriage negates their common-law marriage.

Instead, the relevance of a ceremonial marriage to the existence of a prior common-law marriage depends on state law. Compare Wacella H. v. Comm'r of Soc. Sec. Admin., No. 2:24-CV-02381, 2025 WL 2664458, at *3 (S.D. Ohio Sept. 18, 2025) ("Ohio courts have found that a ceremonial marriage after a purported common-law marriage is inconsistent with assertions that a couple had a common-law marriage." (quotations omitted)) with Turner v. Barnhart, 245 F. Supp. 2d 681, 685 (E.D. Pa. 2003) ("Contemplation of a civil or religious wedding ceremony does not negate a prior intent to establish a common-law marriage" under Pennsylvania law.). The New Hampshire Supreme Court has not addressed the issue. "Therefore, the court must consider New Hampshire law and persuasive decisions from other jurisdictions to determine whether it can predict the course the New Hampshire Supreme Court would take if the issue were presented." Deutsche Bank Nat'l Tr. Co. v. Pike, No. 15-CV-304-JD, 2017 WL 3309681, at *3 (D.N.H. Aug. 1, 2017).

The court predicts that the New Hampshire Supreme Court would hold that a subsequent ceremonial marriage does not negate the existence of a common-law marriage in all circumstances. Here, the only evidence in the record regarding the reason for Kucera and Kelloway's ceremonial marriage is that the couple wanted to ensure that Kucera could make decisions regarding Kelloway's medical care in the final stages of his life, which required a ceremonial marriage. The court is persuaded that the New Hampshire Supreme Court would follow the "sound public policy," Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013), of Pennsylvania in holding that a ceremonial marriage under those circumstances does not negate a prior common-law marriage. See Turner, 245 F. Supp. 2d at 685 (granting claimant's motion to reverse the Commissioner's denial of her application for widow's benefits based on a common-law marriage because "the fact that both parties were seeking a [ceremonial] validation of their marriage during the final stage of [the decedent's] terminal illness does not constitute substantial

evidence that they never intended to create a common-law marriage"). It may be that after further review of the record, the ALJ could determine that additional circumstances surrounding Kucera and Kelloway's ceremonial marriage undermine Kucera's claim that the couple had a prior common-law marriage. But his conclusion that Kucera and Kelloway's ceremonial marriage, in and of itself, negated the existence of their prior common-law marriage is contrary to the law.

In sum, the ALJ based his decision on an incorrect legal standard when he assumed that a ceremonial marriage would negate a common-law marriage in all circumstances. Further, the ALJ was not free to ignore evidence in the record.. On remand, the Commissioner shall consider, on the record as a whole, whether Kucera and Kelloway had a common-law marriage.

## Conclusion

For the foregoing reasons, Kucera's motion to reverse (doc. no. 7) is granted and the Commissioner's motion to affirm (doc. no. 9) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the matter is remanded for further proceedings consistent with this order. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 8, 2026

cc: Counsel of Record.